May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Baljinder Singh Cheema. Just keep your voice up, Mr. Jobe. Thank you, Your Honor. It's undisputed that in this case Mr. Cheema filed an application that was patently frivolous. He confessed during the course of his hearing in front of the immigration judge that his asylum claim was entirely fabricated. And as a result, the immigration judge imposed what one court has referred to as the death penalty. As what? The death penalty for immigrants, Your Honor. It's section 208d6 of the INA, which holds that anyone who files a frivolous application is permanently barred from any immigration benefits. It means that if it's upheld, he would never be able to set foot in this country again. And for this particular individual, that's a big deal because he's married to a United States citizen. He has a U.S. citizen child. If this frivolous finding is vacated, all that means as a practical matter for him is that he would be able to leave the United States, apply for an immigrant visa abroad. To get that visa, because he committed fraud, he'd have to apply for a waiver. To get that waiver, he would have to demonstrate that his wife is going to suffer some extreme hardship and that he's deserving of the exercise of discretion. So that's what would happen if we have a favorable ruling. Now, whether the court can uphold the frivolousness finding in this case depends on whether he received the advisals that are set forth in section 208d4 of the Act. 208d4 says that at the time of filing an application for asylum, the Attorney General shall advise the alien of both his right to be represented by counsel and the consequences of filing a frivolous asylum application. Now, in the real world, there are three different points in time when these advisals are given as a practical matter. First, they're given in the asylum application. There's a short statement there that describes the consequences of filing. But when somebody files affirmatively and they go before an asylum officer, at the asylum office, before the person is sworn to the application, the person is given a written advisal that's translated in front of the asylum officer. And that's set forth on page 161 here in the record. The third point in time when these advisals are supposed to be given is when an application is either referred to an immigration judge or filed for the first time with an immigration judge, the immigration judge nowadays gives both an oral and a written advisal of the consequences. Now, in this case, it's my view that the case is going to turn on whether the advisals in the asylum application were adequate. And I say that because, if we could take them in reverse order, when the asylum application was refiled with the immigration judge, the immigration judge accepted it but gave no advisals whatsoever. So there's no dispute that this person didn't receive any proper advisals from the immigration judge. The next issue is, well, did he receive the proper advisals at the time of the interview when he was sworn to the application in front of the asylum officer? Now, interestingly, this guy, he was interviewed not once but twice by an asylum officer. He was interviewed on September 11th. And at that time, there was a complete interview. And if you look at the last page of the asylum application, he signed his application at that point. But there's no evidence that any advisals were given at that September 11th interview. And so it's our view, because the statute requires... Let me ask you a question, Mr. Jones. So you said, practically speaking, these advisals are given three times in the process. They're supposed to be given. Well, no. You just said supposed to be given. Yeah. Okay. Where in the statute or the regulation about filing asylum applications, does it say that the I.J. or the asylum officer... It doesn't. ...is obligated to give the advisal? It doesn't specifically. I guess my reading on this, Your Honor, and just as a practitioner thinking about the best way to administer this particular statutory provision, is that it seems to me it all depends on how you interpret that phrase, at the time of filing. And I think the best interpretation of that phrase for purposes of this provision is that the time of filing is when somebody appears before an asylum officer and is sworn to his application. When he swears to the application, in my mind, that's the time of filing. And as a matter of practice, that's when an advisal is given. Now... Go ahead. Go ahead, Judge. The same thing I think holds true when somebody goes to immigration court. Nowadays in immigration court, you can't file... But the statute contemplates that the asylum application can be filed by mail. The regulations do. Right. Yeah. So it all goes back to how you interpret that phrase, at the time of filing. Now, the government's view is that filing occurs when it's received by the asylum office. But obviously when it's received by the asylum office, there's nobody there to give the advisal. And that's why they're saying that... Why does the advisal have to be oral? Where does that... I don't... Where is that indicated in the statute or the regulation? No, I'm not suggesting it has to be oral. But it has to be administered at the time of filing. And the problem is that if you accept the government's interpretation of time of filing, the time of filing in this case was August 9th. Well, look at the way they constructed the application. Yeah. So it has the warning. It's in bold. It says warning in bold letters. Yeah. It says print complete name. Write your name. And then it has this requirement by the interpreter if it had to be interpreted. Right. I mean, why... I don't understand why that's not sufficient. That's inadequate. Yeah. In this particular case, again, I'm trying to abide by the plain language of the statute because the penalties here are very strict and I'm expecting the Court to require, you know, demand complete compliance with the statute. Well, it's on there at the time of filing, isn't it? Pardon me, Your Honor? At the moment of filing, there it is. No, not in this case, Your Honor. No, that's not true. Sure it is. It's on the application. No. See, in this case, you know... Let me ask you a different question, sort of an elementary question. Can I answer the point that you just raised? Go ahead. See, in this particular case, Your Honor, the application was signed on July 15th. I understand. And it was filed. It was received 25 days later. Isn't that often the case? I understand that. No. But I'm just saying at the time of filing, there it is. And the fact that he signed it a day earlier or 20 days earlier doesn't seem relevant. But let me ask you a different question. Yes. I don't see that you – this argument as such was ever made to the BIA. The argument... And the BIA was never asked to focus on at the time of filing language. You know, when I do my rebuttal, Your Honor, let me take a look at that, and I'd like to answer that question. Well, let's say it wasn't. Then it shouldn't be here, should it? No, I disagree with that, because the Rebus case is directly on point on that question. Because Rebus, what it says is that if the BIA says that the advisals are sufficient, then basically the sufficiency of the advisals, all questions relating to that are in front of the court. All questions? Well, they didn't raise any questions. Yes. Whether the adequacy of the advisals are – that's an issue that was preserved. The BIA specifically ruled that the advisals in this case were sufficient, so in terms of exhaustion... Well, sure. Because he says they're insufficient for reasons one or two, and the BIA says they're sufficient. That's... And your view is that our cases reach far enough that if you raise – if you say it's not sufficient for reason A, and they say it is sufficient, then that's good enough, and we go ahead and do the whole thing, correct? Yes. The BIA specifically found these to be adequate, so... Of course. But going back to your question, Your Honor, about this whole thing about time of filing, you know, the statute, it doesn't say, you know, that the advisals have to be given prior to filing. If it did, then I would agree with your interpretation that, you know, receiving these in the application a month before meets that requirement. What if it's 30 seconds before? Well, I think it has to be... Because, again, that's not at the time of filing on your theory, is it? Right. Or, say, 10 minutes before. Right. And I agree with your point there. I mean, there's a certain gray area, but there has to be, you know, a closer proximity to filing than a month. What is that? In your view, we just balance, say, six factors and decide whether it's close enough or... I personally think that the better way to construe the statute, as I said before, Your Honor, and to make sure that these advisals are administered, because you're going to be dealing with people who don't speak the language, they're not reading the application, these applications are being prepared by people like, in this case, you know, a non-lawyer, an interpreter. We have no idea whether these things are being read to these individuals. If you really want to make sure that these advisals are being provided as Congress intended, because Congress intended the penalties to attach only if the alien received the advisals. And if you really want to do that, then the proper way to do that is to construe at the time of filing to be that point in time when the person appears before an immigration judge or an asylum officer and is sworn to the application. That, to me, is the time of filing, and that, to me, is the proper point for them to... Even if it was actually filed earlier. Pardon me? Even if it was filed earlier. The regs don't seem to... I'm sorry. It all depends on how you construe time of filing, again. Okay, so at the time of filing, you don't want to read that as plain language, that at the time he literally files it, you want to read that as, well, at the time, some other time. No, I mean, I think the time of filing, there's a certain ambiguity here. I mean, otherwise, if you're going to say that the time of filing is simply when the thing is submitted, then everything that the government's doing to make sure that these advisals are administered is superfluous. You would be invalidating all those efforts, because they give these advisals at the time of the asylum interview and at the time the thing is filed in court. And if you're going to rule that, well, all that matters is what's in the application, and all the government's been doing for these years to make sure that these people are properly advised, you're going to declare that unnecessary. I don't think it needs to be that. Well, we do that all the time, though. Pardon me? Courts, for example, do that all the time. But what's the point? Somebody wanders in the court, and the court gives them an advisal that he's had before or that he's known before. His lawyer has told him. The courts tell him. I mean, all that could be called superfluous, too, because you could always put in evidence, for example... But as a legal matter... As a legal matter, those advisals would become completely meaningless. Hasn't the agency interpreted at the time of filing to mean when it's actually submitted? Yeah. So why isn't that entitled to some deference? I think it is. And it's not at the time the application has been submitted. There's no case law. No, but the regulation, that's the way the agency has interpreted it. No, that's not, actually. I mean, the way they've interpreted it is just the way I've described, is that asylum officers have an obligation when you go into an asylum interview and when you're sworn to the application to provide you with the advisal. That's the way they're implementing the law. The same thing with an immigration judge. When you go before the judge and you swear to the application, you're given the advisal, both orally now and in writing. That's the way they're construing and implementing the law. Well, then the information on the application falls under your superfluity rule, right? Now, I think that It's surplus there because it does I'm not saying that There's no function, right? No. I'm not saying that the information on the application can never be a proper advisal. I do think that there's an issue about time of filing. But the information in the application, if somebody were to go in and concede, as they did in Rebus, I think, you know, that I read this advisal, I understood this advisal, and I went ahead and filed this application, maybe you could construe that. But that's not going to be the normal case, because the normal case all too often is somebody's not represented by a lawyer, somebody else is preparing the application, the individual doesn't speak the language, he's not reading the instructions, they're not being read to him. And this is a, you know, the law Let me ask you this, counsel. If the person appears at the hearing and the I.J. has the person affirm that the application is true and correct and the petitioner is familiar with the contents of the application but doesn't go one step further to repeat the advisement that's at issue here, in your view, would that be sufficient? No, it's not. I mean, and again, they've been given instructions to do, as I'm describing, to go well beyond that and make sure that these aliens are given a written advisal about the consequences. Well, that may be good practice. Right. But is it statutorily required? Yes, I think it is. Because in my view, again, the proper construction here is time of filing is when you're sworn into the application. I think I only have a minute, 30 seconds. That's fine. You can say that. Thank you, Mr. Ruback. May it please the Court. Jonathan Robbins here on behalf of Eric Holder, the respondent. Good morning. Well, as my colleague mentioned, there's no dispute that this was a totally fraudulent asylum claim. The only dispute is with respect to whether a petitioner received notice of the consequences of filing a frivolous asylum application. And the answer to that is absolutely, yes, he did. He received the written notice on the asylum application, as Your Honor noted, which is in bold. It says, warning, you will be subject to these penalties. He also signed the declarence oath before the asylum officer. You know, I think I can't remember if we have three of these cases today. I can't remember in this case. But didn't the BIA make note of the fact that he received both? Yes. The Board's decision does specifically talk about both the written notification that he received and the declarence oath. So what does the Board consider is sufficient in your view in light of its existing precedential decisions? I'm sorry. What's the Board's view on whether notice in the application, whether notice in the application is sufficient? Well, I don't think the Board specifically addressed in this particular decision whether or not written notice was sufficient. I said any, any precedential decision. Is there anything from the Board on how they construe this? Well, I don't think directly on point with respect to solely written, whether or not the written notification on the asylum application is sufficient by itself. But, again, the Board doesn't really have to because we have the statute and regulation which specifically speak to that point. Well, we have a statute. Yes. And the Attorney General in implementing the regulation regarding the frivolous statute specifically, and discussed this, and this isn't just some willy-nilly decision. This is something that was subject to notice and comment, which the Attorney General talked about at length. And it said that the regulation provides the current safeguards because it notifies them, notifies an alien that he or she is subject. In the application. No. That he or she is subject to the penalties that are defined in the statute. And he also talks about the written safeguards in the application also provide the appropriate safeguards. Has the agency defined, issued any regulation or any decision or anything that defines at time of filing? No, they haven't. What does filing mean for purposes of an asylum application? Well, for example, when somebody mails in their application and they sign their application and they file it in, the day that it counts for the clock to start running on when their asylum application was filed is the day that it's received by the office. Is it like, you know, you go down to the district court filing window and they stamp your, it says filed. Yes, exactly. Do they do that here? Does the agency do that? I don't remember. I didn't see the application to see if it was stamped. But Petitioner signed his application. And as a practical matter, again, the Attorney General has the requirement to provide certain advisers. That's what the statute tells them to do. And one of the reasons this frivolous bar was set in place is because work authorization starts as soon as they file their asylum application. So what was happening is people were filing just blank applications to start the clock running on their, so they could get their work authorization. And so obviously they wanted to put a stop to this. Now, as a practical matter, if I'm an alien and I want to send in and fabricate an asylum claim, and I sign my application and I send it in, at that point, before I've ever been before an asylum officer, before I've ever been before an immigration judge, I've filed a frivolous asylum application because I've willfully sent in a fabricated claim. So now you're not just putting yourself in the shoes of the Attorney General. You have to comply with the statute and provide notice. How do you do that? There's only one reasonable way to do it, and that's to provide written notice on the application of the warnings and the consequences of filing a frivolous application. There's no really any other reasonable way to do it. I know my colleague has spoken about these different stages where they receive these warnings, with the asylum officer's interview and at the immigration judge. But there are circumstances where a person is going to have filed a frivolous asylum application prior to ever seeing any individual. Do you think the term in the statute, at time of filing, do you think that's vague? I don't think so. Do you think that's an issue that the Board should decide? I think it's pretty self-evident from the way that, you know, from mailing in an application. Again, the clock starts running when it's received by the asylum office, but at the same time as a practical matter. See, I guess what I'm getting at is, you know, we often are, you know, a lot of the times the lawyers from your office come and comply and say, well, this should go back to the Board, so the Board can interpret. Well, I think the first crack at what all this means. Oh, well, that's, well, certainly that, you know, I'll leave it to the Court to determine whether that needs to be done. But, again, the statute and the regulation make it relatively clear. Well, so one argument is, I mean, one of the arguments was that under the statute they have to give oral notice. But the statute clearly doesn't say that. I mean, it doesn't say anything. So either form of notice, I think, would comply. I mean, that seems pretty clear under Congress. Congress just mandated that the advice will be given. They didn't say whether it had to be oral or in writing. But at time of filing, what does that mean? Well, at time of, it's when the alien sends in his or her asylum application and it's received by the office. So that date is when the clock starts running. That's the way it's always been perceived in every immigration case. It's a, it's a. I guess we could say that it's just ambiguous, but we think a reasonable interpretation would be that. Right. Which is what. Which would leave the agency some discretion later to change it if they wanted to. Right. And, again, the Tenth Circuit case, Ribas v. Mukasey, which determined that the written notice in the application was sufficient, determined as a matter of law that this was a sufficient notice given the statute. I don't think they addressed the phrase at time of filing. They didn't address that. But, again, it's hard, given that their holding is that as a matter of law, the written notice is sufficient. I think it's clear the way, relatively clear the way they interpreted that to mean when Petitioner said. In the cases where the Board has addressed this, the advisal notice, they have been pretty clear about the eight I.J.'s giving notice during the course of the hearing. Well. I mean, is that a signal that they really think that some sort of formal oral notice ought to be given at the beginning of the whole process? No. Again, what we look to is the statute and the Attorney General's interpretation of the statute. Now, my colleague has mentioned in his brief that in the operating manuals they say that it's good practice for an immigration judge to. The Board said that in Y.L., too, I guess, during the course of the hearing, if they're thinking about. Right. Which is different. I understand that. Again, to say it's good practice is sort of implicit acknowledgment that it's not actually required in the statute or the regulation. And certainly it is good practice, because, as my colleague noted, the penalty is better to err on the side of more notice, I think. I think everybody would generally agree to that. But, again, there are circumstances where an alien is going to have filed a frivolous application before he ever sees an immigration judge, I would say in most instances. And there has to be a way to provide notice to the alien prior to that time, because he will have filed a frivolous application before that. And, again. You said that the clock starts running when the office receives the application. So is it a matter of practice that the date of receipt of the application is kept track of for purposes of running the clock? And that's been deemed to be the date of filing as a matter of practice? Yes. Yes. For example, there's a year deadline to file an asylum application, and that's the date that's used to determine whether it was filed within a year of an alien's date of entry. So that is the – so, for example, if they mail it in and it doesn't get there until afterwards, I believe that the date that it's received is the date that's counted. So it's really a stop clock kind of thing. It stops the running of the one year. Well, that's the way it's generally perceived. Again, with respect to this, I mean, that would have to be the date that is considered to have been filed. That's really the only date that's ever been used. I can't think of an instance where a different date has been used. My colleague also in his brief – By the way, are there any cases that interpret where the Board has said that the date they receive it is the date for determining whether the alien has met the one-year bar? I'm not sure. I would have to double-check on that. I'm fairly certain it's been addressed, but I can't think of a name of a Board case in which it's been talked about. Okay. I'll check. My colleague also in his brief sort of makes a suggestion. He claims that it appears Petitioner wasn't represented in the early stages of his asylum application. The record doesn't support that claim. It looks like he was represented. There's a notice of entry of appearance, which is signed by Petitioner on July 15th, 2002, on page 519 of the record, which is also, you'll note, the same day that he signed his asylum application. And it enters an appearance of a Samuel Mina. So it does appear as though he was represented at the time he filed his application, and certainly up until 2002, because at that point, on page 235 of the record, the agency sent that same attorney a referral of notice regarding his asylum interview. So it appears, based on the record, that it looks like he was represented during that time. And, again, this comes down to whether Petitioner received notice. He's got the written notice on the asylum application in bold letters that specifically informs him. He signed a declarant's oath at the asylum officer's interview, which specifically says that he had understood the consequences of filing a frivolous application and that it also contains a signature by the interpreter that says it was read to him in his native language and that he understood it. Again, this is something, you know, the attorney general in the regulation says, this regulation is sufficient to put them on notice that they are subject to the requirements in the statute. You know, there's that famous case with the Federal Register, where farmers are presumed to know what's in the Federal Register, despite not having legal expertise or anything of the like. And so there's a regulation out there. There's the asylum application and the specific oath. So to say pretty much the I's were dotted and the T's were crossed as it pertains to notice in this case. I don't think there's any real reasonable argument that he didn't receive notice. So unless there are any specific questions, any further questions with respect to what sufficient notice would be, I would thank the Court for its time and respectfully request that the Court uphold the Board's decision. Thank you very much for your time, Your Honors. Again, under 2AD6, the penalties only apply if the alien has received the necessary advisals. And in a case like this, where the application was completed by somebody other than the applicant himself, the applicant doesn't speak the language, doesn't speak English, and is relying on some third party, often a notary, or a lawyer, or an interpreter, as in this case, to read these advisals, I fear that a decision here from the Court that says that the advisals in the application are across the Board adequate would actually be undermining the will of Congress. Because Congress intended that these penalties apply only when there's actual receipt, you know, receipt of the advisals. You know, I guarantee that. Breyer, what if we said something, well, certainly that, coupled with the advisal before the asylum officer, those two together certainly are enough. Suppose one said that, so one didn't have to go any further than this case. I would say that the advisal before the asylum officer certainly can be sufficient, depending on how you construe that phrase, at the time of filing. The problem is it's not sufficient in this case, because it didn't occur at the time the individual was originally sworn to the application. You know, as I said, he went for his original interview September 11th, and no advisals were given. He was called back for an interview on November 15th, and it was only then that the advisals were given. That was months after filing. So that approach isn't going to work in this case. So that was too late. The one on the application is too early. Being advised by the asylum officer a second time around is too late. Well, Congress chose the phrase, Your Honor, at the time of filing. We need to give effect to that. I understand that. What I'm saying is that you put it in a very interesting time frame in that respect. At the time of filing has to mean something precisely at the time of filing, practically, or more or less at the time of filing. There has to be some immediacy. Again, that's why I think the best, both from a legal perspective and in terms of administering the statute, is to hold the time of filing, or remand to the board for their opinion in the first instance, but to hold that time of filing. It's filed when you're actually sworn to it. You know, if you submit an application and you get to court and the judge says. . . It's filed when? When you're sworn to the application. Before there's any testimony taken either in court or at the asylum office, you're sworn to it. And it's my view that at that moment when you're sworn to it, that's when the thing should be treated as filed. So for purposes of determining whether or not an application is timely, you would use a different date. Yes, I would. At the time it's submitted to the office. Yes. For purposes of determining whether or not it was frivolous when it was submitted to the office, you would say can't look at that until the filing is not really complete until he appears before an asylum officer. Yes. The two provisions have very different purposes. But that doesn't match. I don't find that at all. Well, normally, obviously, we're going to give the same meaning to the same word. But here the purposes of these two provisions are so different, I myself don't see any problem with giving them different meanings. I mean, I guess the agency could interpret it that way. Yes. Well, and certainly, you know, as a practical matter, Your Honor, that is how the agency has been interpreting it. Otherwise, these advisals by the AO or the IJ would become meaningless. All right. I think we got your argument, Mr. Jobe. And you're needed next door at one of the other courtrooms. Got it. I appreciate your time.
judges: Fernandez, Paez, Nguyen